IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:06-CT-3112-BO

| | | |
|---|---|---|
| CHARLES ROBERT BAREFOOT, JR., | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| KEM PICKETT, et al., | ) | |
| Defendants. | ) | |

Plaintiff Charles Robert Barefoot, Jr. ("Barefoot") filed this civil rights action. Properly before the court is defendants' motion for summary judgment. The matter is ripe for determination.

As stated in the previous court order, defendants' motion to dismiss was denied on the basis that it was not clear on the current record whether defendants' interest in maintaining security, discipline, and order had been done by the least restrictive means. Barefoot argues, or may argue, he practices two religions, Ku Klux Klan and Native American.[1] He asserts he has been precluded or forbidden from practicing either and his prayer necklace has been illegally confiscated.[2] The court in liberally construing the filing found plaintiff to have brought his

---

[1] Barefoot's filings are very difficult to understand, for example he states "Plaintiff Barefoot as [sic] being alleged to be a Ku Klux Klan leader, which plaintiff Barefoot is no affiliation of the Ku Klux Klan plaintiff is a pastor of the above described church and a Native American Shaman." (D.E. # 32, p. 3) The above described church is described as "the, church, of, the, Nations, Knights, of the Ku, Klux, Klan, Inc." (Id.)

[2] Defendants state that Barefoot does not argue about his medical bag in this complaint. Defendants depiction of the complaint is correct. Because of the voluminous and confused nature of the filings of this case, as well as the litigiousness of Barefoot, the court included the medical bag. While it is included within several of his responses (D.E. # 32, p. 2) and his grievances, this order will focus solely on the prayer necklace.

action as both a First Amendment claim under <u>Bivens</u> and under the Religious Land Use of Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. §§ 2000cc-1 et seq.

Factual Determination

Defendants admit plaintiff's sacred prayer necklace was confiscated, not because it was a religious item, but because it was prohibited as an item that could easily be used to harm plaintiff, other inmates, or staff. (Answer, DE # 40; Aff. of Def. Pickett in Support of Summ. J.). Defendants describe the sacred prayer necklace as constructed of a woven rope material. (<u>Id.</u>). In an effort to accommodate plaintiff's religious practices, defendant Pickett, administrator of the detention center, issued a directive on June 2, 2006, allowing plaintiff to carry religious items during a one hour per week prayer time outside his cell. (Mem. in Support of Summ. J., Exhibit C). The directive further provided for the search of plaintiff upon leaving and reentering his cell. (<u>Id.</u>) Defendant Pickett believed plaintiff held a leadership role in the Ku Klux Klan and this caused Pickett to consider plaintiff at heightened risk of physical harm from other inmates who might object to plaintiff's racial views. (Aff. of Def. Pickett in Support of Summ. J.) In support of this belief, in July of 2006, plaintiff complained to staff and medical personnel that he had received racial and political beatings by Sampson County and Central Prison officials. (Mem. in Support of Summ. J, Exhibit A). On March 13, 2006, Judge Paul G. Hardison issued a safekeeping order finding that due to the nature of the charges against plaintiff, the Sampson County Detention Center was not capable of segregating and safeguarding plaintiff with threats having been made to plaintiff and his co-defendants. (<u>Id.</u>, Exhibit B). Plaintiff reported directly to defendant Pickett that "big black guys" at Central Prison had used force against him.

(Affidavit of Defendant Pickett in Support of Summary Judgment). Each of these circumstances contributed to defendant Pickett's concern for the security risk posed by plaintiff. (Id.)

Discussion

Summary judgment is appropriate when, after reviewing the record taken as a whole, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the non-moving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248, but "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). A mere scintilla of evidence supporting the case is not enough. Anderson, 477 U.S. at 252. The court construes the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in the non-movant's favor. Matsushita Elec. Indus. Co., 475 U.S. at 586-87.

The Religious Land Use of Institutionalized Persons Act of 2000 ("RLUIPA") provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in [42 U.S.C. § 1997], even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
> (1) is in furtherance of a compelling governmental interest; and
> (2) is the least restrictive means of furthering that compelling government interest.

3

42 U.S.C. § 2000cc-1(a). RLUIPA defines religious exercise as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). Under RLUIPA, a plaintiff bears the burden of demonstrating that defendants imposed a substantial burden on the exercise of his religion. See 42 U.S.C. 2000cc-2(b); Gladson v. Iowa Dept. of Corrections, __ F.3d __, __, 2009 WL 36813, *5 (8th Cir. Jan. 8, 2009); Lovelace v. Lee, 472 F.3d 174, 182 (4th Cir. 2006); Adkins v. Kaspar, 393 F.3d 559, 567 n.32 (5th Cir. 2004). The burden then shifts to the defendants to demonstrate that the substantial burden furthers a compelling governmental interest and does so by the least restrictive means. See Lovelace, 472 F.3d at 182. Furthermore, a court must give due deference to the experience and expertise of prison officials and may not substitute its judgment in their place, unless the inmate proves by substantial evidence that officials have exaggerated their response to the security considerations. Van Wyhe v. Reisch, 581 F.3d 639, 650 (8th Cir. 2009); Hoevenaar v. Lazaroff, 422 F.3d 366, 371 (6th Cir. 2005); and Murphy v. Mo. Dept. of Corr., 372 F.3d 979, 987 (8th Cir. 2004).

Likewise, plaintiff has the right to practice religion under the protections of the First Amendment while incarcerated. O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987). However, the right again is not without limits. Id.; see also Thornburgh v. Abbott, 490 U.S. 410, 415 (1989); Turner v. Safley, 482 U.S. 78, 85 (1987);

The North Carolina Department of Correction ("DOC") has a compelling governmental interest in maintaining security, discipline, and order. See McRae v. Johnson, 261 Fed. Appx. 554, 558 (4th Cir. 2008) (per curiam) (unpublished); Hines v. South Carolina Dep't of Corr., 148 F.3d 353, 358 (4th Cir. 1998). Other courts have upheld prison regulations suppressing the use

4

of religious symbols which promote racism and violence on the basis that it "serves the compelling state interest of maintaining prison security." Wood v. Me. Dep't of Corr., No. CV-06-156-B-W, 2008 WL 2222037, at *2 (D. Me. May 22, 2008) (unpublished); see Borzych v. Frank, 439 F.3d 388, 391 (7th Cir. 2006).

In the case at hand, without deciding, the court shall assume plaintiff has met the prima facia case in establishing a claim under RLUIPA.[3] However, the government has shown it is using the least restrictive means of furthering several compelling governmental interest: maintenance of health and security of plaintiff. The detailed affidavit of defendant Pickett goes step by step through the reasons for the confiscation of the sacred prayer necklace. Furthermore, accommodations have been made to allow Barefoot to possess the necklace at certain designated times within a week. It is clear that the concern over the necklace was not that it was a religious item, but a security risk in that it could be used as a weapon. The court must allow due deference to the experience and expertise of the administrators of the facility. The court finds that there have been no First Amendment or RLUIPA violations in confiscating Barefoot's sacred prayer necklace.

For the above stated reasons, defendants' motion for summary judgment is GRANTED and the matter is DISMISSED. Having so determined, all other pending motions are DENIED as MOOT.

---

"We may 'not judge the significance of the particular belief or practice in question.' Lovelace v. Lee, 472 F.3d 174, 187 (4th Cir. 2006). Indeed, 'religious exercise' is defined to include 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief.' 42 U.S.C. § 2000cc-5(7)" Smith v. Ozmmint, 578 F.3d 246, 251 (4th Cir. 2009).

5

SO ORDERED, this the 13 day of August 2010.

                                              TERRENCE W. BOYLE
                                              UNITED STATES DISTRICT JUDGE